**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


**APRIL KING,**

>              **Plaintiff,**

>   **vs.**                                          **Civil Action 2:05-cv-966**

>                                                    **Magistrate Judge Norah McCann King**

**STATE OF OHIO,** *et al.***,**

>              **Defendants.**


**<u>OPINION AND ORDER</u>**

This is a civil rights action under 42 U.S.C. §§1983 ("Section 1983"), 1985 ("Section

1985") and 2000e-5 ("Title VII"), in which plaintiff, formerly a corrections officer, claims that

the termination of her employment, purportedly because she violated rules prohibiting personal

relations with current or former inmates, was effected in contravention of her rights under the

Constitution of the United States and because of her sex and race.  Plaintiff also challenges the

relevant rules under the First Amendment to the United States Constitution.  With the consent of

the parties, 28 U.S.C. Section 636(c), this matter is before the Court on the motion of defendants

to dismiss Counts One and Eight of the *First Amended Complaint* ("*Defendants' Motion to*

*Dismiss*"), Doc. No. 9.  For the reasons set forth below, *Defendants' Motion to Dismiss* is

**GRANTED** in part and **DENIED** in part.

**I.      RELEVANT FACTS**

Plaintiff is an African American woman who began work for the Ohio Department of

Rehabilitation and Correction ("ODRC") in mid-1991 as a corrections officer.  *First Amended*

*Complaint* ¶¶ 3, 11.  On May 4, 2004, plaintiff's employment was terminated for allegedly

engaging in an unauthorized relationship with a paroled inmate, a violation of Rule 46 of

ODRC's Standards of Employee Conduct.  *Id.* ¶¶ 13, 17.  Before her termination, plaintiff was

the subject of an investigation and a pre-disciplinary hearing.  *Id.* ¶¶ 17-30.

　　　While employed at ODRC, plaintiff was a bargaining unit employee and, as such, she

filed a grievance over her termination, which grievance proceeded to arbitration.  *Id.* ¶¶ 31-32.

The arbitrator concluded that ODRC had just cause to terminate plaintiff for violation of Rule

46.  *Id.* ¶ 33.

　　　Plaintiff filed this action on October 21, 2005, and on October 25, 2005, filed an

amended complaint naming as defendants ODRC, former ODRC Director Reginald A.

Wilkinson and former ODRC Deputy Director Terry Collins in their official capacities;

Investigator Paul Arledge, Institutional Inspector Carl Sayers and Parole Officer D.J. Norris in

their personal capacities; and Major William Blaney and Arbitrator David Pincus in their official

and personal capacities.  *First Amended Complaint* pgs. 1-2, ¶¶ 4-10, 50.  Plaintiff alleges eight

causes of action in the *First Amended Complaint*:

Count One :　42 U.S.C. § 1983 claim against defendants Arledge, Sayers, Norris
　　　　　　and Blaney in their individual capacities for allegedly violating
　　　　　　plaintiff's substantive due process rights;

Count Two:　42 U.S.C. § 1985 claim against defendants Arledge, Sayers, Norris
　　　　　　and Blaney in their individual capacities for allegedly conspiring
　　　　　　to violate plaintiff's civil rights;

Count Three:　disparate impact claim under Title VII;

Count Four:　disparate treatment claim under Title VII;

Counts Five

and Six:      Section 1983 claims challenging Rule 46 and Standards of
              Employee Conduct as unconstitutionally vague;

Count Seven:  Section 1983 claim challenging Rule 46 and the Standards of
              Employee Conduct as unconstitutionally overbroad; and

Count Eight:  Section 1983 claim challenging Rule 46 and the Standards of
              Employee Conduct as violative of plaintiff's right to freedom of
              association and privacy.

*First Amended Complaint* ¶¶ 49-93.

On February 2, 2006, defendants filed *Defendants' Motion to Dismiss*, Doc. No. 9,

requesting dismissal of the *First Amended Complaint* in its entirety.  On March 24, 2006,

plaintiff filed *Plaintiff's Memorandum Contra Defendants' Motion to Dismiss* ("*Plaintiff's*

*Memorandum Contra*"), Doc. No. 14, wherein she, *inter alia*, voluntarily dismissed with

prejudice Count Two of the *First Amended Complaint*.  *Plaintiff's Memorandum Contra* at 2.

On April 7, 2006, defendants filed the *Reply Memorandum in Support of Defendants'*

*Motion to Dismiss* ("*Defendants' Reply*"), Doc. No. 21, wherein they concede that discovery

may be appropriate as to all remaining claims except those asserted in Counts One and Eight.

*Defendants' Reply* at 1.  Therefore, the only claims presently before the Court in connection with

*Defendants' Motion to Dismiss* are Count One, a substantive due process claim, and Count

Eight, a claim based on plaintiff's claimed rights to freedom of association and privacy.

## II.    ANALYSIS

Defendants move to dismiss (a) Counts One and Eight of the *First Amended Complaint*

for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6),

(b) Counts One and Eight against the defendants sued in their individual capacity based on their

entitlement to qualified immunity on these two claims, and ©) Count Eight as it relates to the

availability of monetary damages against defendants Wilkinson and Collins in their official

capacities.

**A.      Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted**

**1.      Standard**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) attacks the legal sufficiency of the

complaint. *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). In

determining whether dismissal on this basis is appropriate, the complaint must be construed in

the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true.

*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Bower v. Federal Express Corp.,* 96 F.3d 200, 203

(6th Cir. 1996); *Misch v. The Cmty. Mutual Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994).

A claim will be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46

(1957).

Thus, this Court will grant a motion to dismiss under Rule 12(b)(6) if the complaint is

without merit because of an absence of facts or law to support the claims in it, or if on the face of

the complaint there is an insurmountable bar to relief. *See generally, Rauch v. Day & Night Mfg.*

*Corp.,* 576 F.2d 697, 702 (6th Cir. 1978).

**2.      Discussion**

Plaintiff brings Count One of the *First Amended Complaint* against defendants Arledge,

Sayers, Norris and Blaney in their personal capacities. *First Amended Complaint* ¶¶ 52, 53.

Plaintiff alleges that these four defendants, all acting under color of state law, deprived plaintiff

"of a right secured by the Constitution of the United States in violation of 42 U.S.C., Section

4

1983, specifically, Plaintiff's property interest in her continued employment with ODRC." *Id.* ¶¶ 50, 51. Plaintiff alleges that defendants Arledge, Sayers, Norris and Blaney provided false testimony (defendant Blaney in his pre-disciplinary hearing report, and the others in their testimony during the arbitration hearing), which presumably led to her termination, thereby depriving her of her property interest in her continued employment with ODRC as secured by the Fourteenth Amendment's guarantee of substantive due process. *Id.* ¶¶ 50-54.

In Count Eight of the *First Amended Complaint*, plaintiff asserts another Section 1983 claim, challenging Rule 46 of the Standards of Employee Conduct as violative of her rights to freedom of association and privacy as secured by the First Amendment to the United States Constitution. *Id.* ¶¶ 90-93.

To state a colorable claim under 42 U.S.C. § 1983,[1] a plaintiff must allege the violation of a right secured by the federal constitution or laws by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, and is not itself a source of substantive rights, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

---

[1]Section 1983 provides in relevant part :

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

### a. Substantive due process

The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  While a literal reading of the Fourteenth Amendment might suggest that it governs only the procedures by which a state may deprive persons of liberty, *i.e.*, procedural due process, the Clause has been understood to contain a substantive component as well.  *Planned Parenthood v. Casey*, 505 U.S. 833, 846 (1992).  The substantive component bars "certain government actions regardless of the fairness of the procedures used to implement them."  *Id.*  As this Court explained:

> "Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'"  *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir.1997).

*Farmer v. Pike County Agric. Soc'y*, 411 F. Supp.2d 838, 843 (S.D. Ohio 2005) (J. Smith).

Plaintiff concedes that the United States Court of Appeals for the Sixth Circuit has held that a public employee's statutory right to be discharged only for cause is not a fundamental interest protected by substantive due process.  *Plaintiff's Memorandum Contra* at 4 (citing to *Sutton v. Cleveland Board of Ed.*, 958 F.2d 1339, 1351 (6th Cir. 1992)).  Plaintiff argues, however, that the termination of her employment satisfies the "shocks the conscience" component of substantive due process.  *Id.*

Defendants agree that there are two types of substantive due process claims; however, defendants argue that plaintiff is not permitted to "go straight to the 'shocks the conscience' analysis without alleging a violation of a fundamental right," *i.e.*, plaintiff must demonstrate the infringement of a fundamental right before the termination of public employment can constitute

6

a denial of substantive due process.  *Defendants' Reply* at 2-3 (also citing to *Sutton*, 958 F.2d at

1351).  Defendants rely on *Gurik v. Mitchell*, 26 Fed. Appx. 500, 505 (6th Cir.

2002)(unpublished), which clarified *Sutton* and previous case law in this area:

> Our requirement that terminated public employees allege violations of
> fundamental rights in order to allege violation of a substantive due process
> property interest in their employment simply standardizes the "shocks the
> conscience" test for purposes of termination from public employment.  In other
> words, a public employee's termination does not "shock the conscience" in this
> court if it was not based on the violation of some fundamental right.

*Id.* at 505.  Because plaintiff alleges no violation of a fundamental right in Count One,

defendants argue, she can assert no viable substantive due process claim.

The relevant case law in this circuit is somewhat conflicting.  *See Sutton*, 958 F.2d at

1351 ("Absent the infringement of some 'fundamental' right, it would appear that the

termination of public employment does not constitute a denial of substantive due process" citing

to *McMaster v. Cabinet For Human Resources*, 824 F.2d 518, 523 (6th Cir. 1987) (same)),

*Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir. 2000) (same).  *But see  Valot v. Southeast Local*

*Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir.1997) (applying the shocks the conscience

standard even where the plaintiff did not allege a violation of a fundamental right: "Because

Defendants' decision not to rehire Plaintiffs did not deprive them of a particular constitutional

guarantee and does not shock the conscience . . . ."); *Farmer*, 411 F. Supp.2d at 843 (wherein

this Court applied the shocks the conscience standard even though the plaintiff alleged no denial

of a fundamental right: "Obviously, there is no specific constitutional guarantee of a right to

assist one's stepson in a county fair livestock competition.  The issue, then, is whether

defendants' action 'shocks the conscience.'").

The Court need not resolve this issue, however, because the claim asserted in Count One

must in either event fail.  Plaintiff's property interest in her employment is not protected by

substantive due process.  *See Sutton*, 958 F.2d at 1351.  Thus, as even plaintiff concedes, the first

category of substantive due process claim cannot proceed.

Under the "shocks the conscience" standard, "the threshold question is whether the

behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to

shock the contemporary conscience."  *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).

According to plaintiff,

> In contemporary conscience, it is inconceivable that a governmental employer
> would employ its investigator—who usually investigate the actions of
> parolees—to spy on one of its employees for an alleged violation of an ODRC
> rule—especially when the alleged violation was reported by an ex-convict,
> seeking revenge for being a jilted lover.

*Plaintiff's Memorandum Contra* at 4-5.  This Court disagrees.

The type of behavior complained of by  plaintiff simply does not rise to the level required

by the standard.  *See Rochin v. California*, 342 U.S. 165, 172-173 (1952) (formulating and first

applying the shocks the conscience test and concluding that, "[i]llegally breaking into the

privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible

extraction [pumping] of his stomach's contents" shocks the conscience).  Indeed, in this circuit,

the standard appears to be recognized only in the context of physical abuse.  *See, e.g., Braley v.*

*Pontiac*, 906 F.2d 220, 225 (6th Cir. 1990):

> Essentially, Braley alleges that Officer Helgemo's misuse of the power
> represented by his police badge was behavior that would shock the conscience of
> a reasonable person.  Applying the "shock the conscience" test in an area other
> than excessive force, however, is problematic.  Not only are there fewer instances
> in the case law, but the "shock the conscience" test is not as uniformly applied to
> cases where excessive force or physical brutality is not the basis of the claim. The
> "shock the conscience" standard, fuzzy under the best of circumstances, becomes
> fuzzy beyond a court's power to interpret objectively where there is a dearth of

previous decisions on which to base the standard.  <u>We doubt the utility of such a standard outside the realm of physical abuse</u>, an area in which the consciences of judges are shocked with some degree of uniformity.

*Id.* (emphasis added).

This Court concludes that hiring an investigator to "spy" on an employee suspected of violating a rule of conduct, even when the alleged violation was reported by an ex-convict who may have been motivated by a thirst for revenge, simply is not "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *See Lewis*, 523 U.S. at 847.

Moreover, the conduct described by plaintiff is simply not the sort of conduct that this circuit has recognized as capable of satisfying the "shocks the conscience" test.  *See Braley*, 906 F.2d at 225.

Consequently, even construing Count One of the *First Amended Complaint* "in the light most favorable to the plaintiff," and accepting all well-pleaded facts as true, *See Scheuer*, 416 U.S. at 236, "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," *See Conley,* 355 U.S. at 45-46.  Accordingly, *Defendants' Motion to Dismiss,* as it relates to Count One of the *First Amended Complaint,* is **GRANTED**.

### b. Freedom of intimate association

Plaintiff was terminated from her employment for her alleged violation of Rule 46 of the Standards for Employee Conduct, which prohibits unauthorized contact and relationships with individuals who are under ODRC's supervision (*i.e.*, inmates, parolees, etc.).  In Count Eight of the *First Amended Complaint*, plaintiff alleges that Rule 46 violates her right to freedom of association and privacy as secured by the First Amendment to the United States Constitution.  *Id.*

9

¶¶ 90-93.  Plaintiff contends that the termination of her employment for violation of this rule deprives her of her right to choose "whether to enter into and maintain intimate personal relationships [which] is within the zone of privacy afforded some constitutional protection[.]" *Id.* ¶ 90.

The Constitution of the United States protects two distinct types of association: (1) freedom of expressive association, which is protected by the First Amendment, and (2) freedom of intimate association, a privacy interest derived from the Due Process Clause of the Fourteenth Amendment and also related to the First Amendment.  *See Akers* v. *McGinnis*, 352 F.3d 1030, 1035-36 (6th Cir. 2003) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984)).  Plaintiff in the instant action asserts that Rule 46 of the Standards of Employee Conduct infringes on her right to intimate association, as opposed to her right to expressive association.  The United States Supreme Court "has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts*,  468 U.S. at 617-18.

The United States Court of Appeals for the Sixth Circuit has held that alleged violations of intimate association will be reviewed under the rational basis standard unless there is a "direct and substantial" burden on intimate association; in the latter circumstance, review will proceed under the intermediate or strict scrutiny standard.  *See Akers*, 352 F.3d at 1040 (6th Cir. 2003). The parties disagree as to whether Rule 46 presents a "direct and substantial" burden on intimate association. Plaintiff contends that it does and defendants contend that it does not.

A "direct and substantial" burden on intimate association is one that presents an absolute

bar to, or makes the majority of the population ineligible for, intimate associations. *Id.* In *Akers,*

for example*,* the United States Court of Appeals for the Sixth Circuit reviewed a Michigan

Department of Rehabilitation rule, similar to Rule 46, and concluded that its effect on one percent

of the population was insufficient to require application of heightened scrutiny standard and,

furthermore, that this would be true even if the rule prevented ten percent of the population from

intimate associations. Plaintiff argues here that Rule 46 disproportionately affects women,

particularly African-American women. *Plaintiff's Memorandum Contra* at 8-9 (relying on

*Montgomery v. Carr*, 101 F.3d 1117 (6th Cir. 1996), which noted that the case for heightened

scrutiny is much stronger if the policy at issue was directed exclusively to women or

disproportionately affected women). Plaintiff contends that, she "expects to prove through

discovery that including both current and former individuals under the supervision of the

[ODRC], the number of restricted people is more than the 1% in Michigan" and that "the number

of people that an African American ODRC employee may interact with in her community [is even

more restricted] because African Americans are incarcerated at a higher rate than white Ohioans":

> During the course of discovery, [plaintiff] expects to establish: (1) African
> Americans make up a disproportionately large percentage of Ohio's prison
> population; (2) African American communities are more "geographically
> compact" than larger white communities; and, thus, (3) African American
> employees, much more frequently than white ODRC employees, will either come
> into contact with, be related to, and/or know various individuals who are or have
> been under the supervision of ODRC.

*Id.* at 10-11.

In opposition to plaintiff's argument, defendants contend that plaintiff must "do far more

than" hope "to establish in discovery that the number of people affected by Rule 46 is more than

the 1% [of those affected,]" because the *Akers* court found that even 10% of the population was

11

too little . . . ." *Defendants' Reply* at 5-6.

This Court, at this juncture, finds plaintiff's argument persuasive.  Although it appears true that plaintiff may need to establish that Rule 46 affects more than ten percent of the population, the Court declines to foreclose plaintiff the opportunity to discover evidence to support her freedom of association claim.  That is, when construing Count Eight of the *First Amended Complaint* "in the light most favorable to the plaintiff," and accepting all well-pleaded facts as true, *See Scheuer*, 416 U.S. at 236, it does not presently appear beyond doubt that the plaintiff can prove no set of facts in support of this claim that would entitle her to relief.  *See Conley,* 355 U.S. at 45-46.

Accordingly, *Defendants' Motion to Dismiss* Count Eight of the *First Amended Complaint* for failure to state a claim upon which relief can be granted is **DENIED**.

**B.      Qualified immunity**

Defendants argue that the individual defendants sued in their personal capacities are entitled to qualified immunity from monetary liability as to the claim asserted in Count Eight.[2] The Court agrees.  *See Saucier v. Katz*, 533 U.S. 194, 200 (2001) (where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided).

**1.      Standard**

The standard for qualified immunity is well-settled:

---

[2]Defendants also raise the defense of qualified immunity as to Count One.  Because the Court has dismissed that claim, the Court will not consider the defense of qualified immunity as to Count One.

> The affirmative defense of qualified, or good faith, immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
>
> An official may, however, be held personally liable for civil damages for unlawful official action if that action was not objectively reasonable in light of the legal rules that were "clearly established" at the time it was taken. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). This "objective legal reasonableness" standard analyzes claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

*Gardenhire v. Schubert*, 205 F.3d 303, 310-11 (6th Cir. 2000).

To defeat a claim of qualified immunity, the plaintiff must first identify a clearly established right alleged to have been violated and, second, establish that a reasonable official in the defendant's position should have known that his conduct violated that right. *Id.* at 311 (citing *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995)); *Johnson v. Estate of Laccheo*, 935 F.2d 109, 111 (6th Cir. 1991)).

> The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991). The defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question. Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

*Id.*

**2.    Discussion**

13

In Count Eight, plaintiff alleges that these individual defendants violated her

constitutional right to freedom of intimate association.  *First Amended Complaint* ¶¶ 90-93.

Defendants argue that, even if plaintiff has stated a valid constitutional in this regard, the

individual defendants sued in their personal capacities enjoy qualified immunity because plaintiff

cannot show that the law surrounding this alleged constitutional violation is "clearly established."

The Court agrees.

It is plaintiff's burden to establish that a defendant's conduct violated a right so clearly

established that any official in that defendant's position would have clearly understood that he

was under an affirmative duty to refrain from such conduct.  *See Gardenhire*, 205 F.3d at 310-11.

Thus, in this case, plaintiff must establish that a reasonable official in the individual defendants'

positions must have clearly understood that terminating plaintiff for a violation of Rule 46 was

unlawful.  *Id.*

In resolving this issue, this Court must look first to decisions of the United States Supreme

Court, then to decisions of the United States Court of Appeals for the Sixth Circuit and other

courts within this circuit, and finally to decisions of other circuits.  *See Daugherty v. Campbell*,

935 F.2d 780, 784 (6th Cir. 1991).  The case law need not show that "the very action in question

has previously been held unlawful;  but it is to say that in the light of pre-existing law the

unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal

citation omitted).

In the case *sub judice*, plaintiff points to no controlling precedent in this circuit, nor any

decisions from other courts within this circuit, for the proposition that her relationship with a

parolee is a clearly established right.  Indeed, *Akers*, which considered a Michigan Department of

Corrections rule similar to the ODRC rule currently before this Court, would seem to suggest the opposite.  *Id.,* 352 F.3d at 1039-41.

Accordingly, *Defendants' Motion to Dismiss,* as it relates to Count Eight of the *First Amended Complaint,* is **GRANTED** as to all individual defendants sued in their personal capacities because these defendants are entitled to qualified immunity from monetary liability on that claim.

**C.      Plaintiff's Claims for Money Damages Against Defendants Sue in Their Official Capacity**

In the *First Amended Complaint*, plaintiff requests, *inter alia*,"[a] judgment awarding compensatory and punitive damages against defendants Wilkinson and Collins."  Defendants argue that Section 1983 claims for monetary damages may not be brought against state officials sued in their official capacities.  *See Kentucky. v. Graham*, 473 U.S. 159 (1985); *Will v. Michigan Dept of State Police*, 491 U.S. 58, 70-71, n.10 (1989); *Hardin v. Straub*, 954 F.2d 1193 (6th Cir. 1992).  The Court agrees.

Thus, even construing plaintiff's request "in the light most favorable to the plaintiff," and accepting all well-pleaded facts as true, *see Scheuer*, 416 U.S. at 236), "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief,"  *Conley,* 355 U.S. at 45-46, in the form of money damages against defendants Wilkinson and Collins in their official capacities, for any violation of plaintiff's right to freedom of association.

Accordingly, *Defendants' Motion to Dismiss* plaintiff's request for money damages against defendants Wilkinson and Collins in their official capacities based on any possible violation of Court Eight is **GRANTED**.

**WHEREUPON** *Defendants' Motion to Dismiss*, Doc. No. 9,  is **GRANTED** in part and **DENIED** in part.  Specifically, as it relates to

1. Count One of the *First Amended Complaint, Defendants' Motion to Dismiss* is **GRANTED** because defendants Arledge, Sayers, Norris, Blaney and Pincus, the only individuals against whom the claim is asserted, are entitled to qualified immunity;

2. Count Eight of the *First Amended Complaint, Defendants' Motion to Dismiss* is **GRANTED** as to the individual defendants in their personal capacities based on qualified immunity, **GRANTED** to the extent that it seeks monetary damages against defendants Wilkinson and Collins in their official capacities and **DENIED** in all other respects.


September 15, 2006                                                  *s/Norah McCann King*
Date                                                                       Norah McCann King
                                                                           United States Magistrate Judge